City of Chicago v. County of Cook.

---

## City of Chicago v. County of Cook.

1. COUNTIES—*Duties and Liabilities Prescribed by Statute.*—The statutes prescribe all the duties which counties owe, and impose all the liabilities to which they are subject. Unless made so by express legislative enactment, they are not considered liable to persons injured by the wrongful neglect of duty or wrongful acts of their officers or agents, done in the course of the performance of corporate powers, or in the execution of corporate duties.

2. MUNICIPAL CORPORATIONS—*Mere Agents of the State.*—A municipal corporation is a mere agent of the state for the purpose of local government within its territorial limits. It has no vested right in its revenues or funds. These are subject to legislative control and disposition.

Assumpsit.—Appeal from the Circuit Court of Cook County; the Hon. FRANK BAKER, Judge presiding. Heard in this court at the March term, 1902. Affirmed. Opinion filed February 9, 1903.

**Statement.**—This is an action of assumpsit by appellant against appellee. The declaration contains the common counts only. Appellee pleaded the general issue. The cause was submitted to the court for trial, without a jury, and the court found the issues for appellee and rendered judgment accordingly. The suit was brought to recover the sum of $22,614, for the support of delinquent children committed by the Circuit Court of Cook County to the House of Correction of the city of Chicago, between July 1, 1899, and September 11, 1900. The charge is for support and custody for seventy-five children for 380 days, at the rate of thirty cents per day. It was admitted on the trial that the rate was reasonable, and the amount of the bill, evidence of which was introduced, is not disputed. The following mittimus was put in evidence:

"STATE OF ILLINOIS, ⎱ ss.        Circuit Court,
County of Cook. ⎰            (Juvenile)
                    Cook County, Illinois.

The People of the State of Illinois, to the Superintendent of the Detention Home of Cook County, Illinois, Greeting:

Whereas, in a certain suit or proceeding lately before the Juvenile Court in said county of Cook and State of Illinois, wherein the alleged delinquency of Frank Dalton was inquired into by said court, and said court found the said Frank Dalton to be a delinquent boy of the age of nine years on or about August, 1900.

The court thereupon entered an order in compliance with ' An act to regulate the treatment and control of dependent, neglected and delinquent children,' in force in the State of Illinois, July 1, 1899, committing the said Frank Dalton to the House of Correction of the city of Chicago, Illinois (John Worthy School), there to remain until he arrives at legal age, or until discharged by said Juvenile Court.

You are therefore hereby commanded to take the body of said Frank Dalton and deliver him to the superintendent of the said House of Correction of the city of Chicago, Illinois, there to remain until he arrives at legal age, or until the further order of said Juvenile Court.

And the superintendent of said House of Correction of the city of Chicago, Illinois, shall also hold said Frank Dalton

subject to the provisions of the law in such case made and provided.

And hereof make due service and return as the law directs.

Given under my hand and the seal of the Circuit Court of Cook County, Illinois, this 1st day of August, A. D. 1900.

(Sgd.)    JOHN A. COOKE,<br/>
[SEAL.]    Clerk."

It was admitted by appellee's attorney that all the boys received in the John Worthy school were committed by virtue of warrants of commitment like the foregoing. It appears from the evidence that the John Worthy school, mentioned in the mittimus, is maintained by and at the expense of the city; that it is connected with the House of Correction, but is separated and isolated from that institution, although it is a department of it, and that when delinquent children are, by the court, committed to the House of Correction, they are received in the John Worthy school and there cared for. It was also admitted by appellee's attorney that boys, under the Juvenile Court Act, could not be committed to the county jail, and that the said jail was not a suitable place to which to commit such delinquents.

CHARLES M. WALKER, corporation counsel, and EDWIN WHITE MOORE, assistant corporation counsel, attorneys for appellant.

EDWIN W. SIMS, county attorney, FRANK L. SHEPARD and WILLIAM F. STRUCKMANN, assistant county attorneys, for appellee.

MR. JUSTICE ADAMS delivered the opinion of the court.

Between July 1, 1899, and September 11, 1899, when the delinquent children for whose care compensation is sought by appellant were committed, the act in regard to "the treatment and control of dependent, neglected and delinquent children" (Hurd's Revised Statutes, 1899, p. 255), was in force. Section 9 of that act contains the following :

" Or if the child is found guilty of any criminal offense, and the judge is of the opinion that the best interest requires it, the court may commit the child to any institution within said county, incorporated under the laws of the state, for the care of delinquent children, or provided by the city for the care of such offenders, or may commit the child, if a boy over the age of ten years, to the state reformatory, or if a girl over the age of ten years, to the state home for juvenile female offenders."

Section 11 of the act is as follows:

" No court or magistrate shall commit a child under twelve (12) years of age to a jail or police station, but if such child is unable to give bail, it may be committed to the care of the sheriff, police officer or probation officer, who shall keep such child in some suitable place provided by the city or county outside of the inclosure of any jail or police station. When any child shall be sentenced to confinement in any institution to which adult convicts are sentenced, it shall be unlawful to confine such child in the same building with such adult convicts, or to confine such child in the same yard or inclosure with such adult convicts, or to bring such child into any yard or building in which such adult convicts may be present."

Counsel, in their argument, referring to the act of 1899, say :

" The case presents for the determination of the court a single question of law. There is no specific provision in the act referred to, that the county shall be liable for the support of delinquents committed to custody. There was no express agreement by the county to pay the city for their support. It is contended, nevertheless, by the city, that these delinquents were a county charge, and that Cook county is made liable for their support by reason of their commitment by the court. It is further contended that an agreement by the county to pay the city the cost of maintaining these delinquents, is implied by the facts and circumstances."

It being admitted that there was no contract between the county and city in respect to the custody and care of the delinquent children, and there being no evidence of any promise by the county to pay for such care and custody, a recovery can only be had, if at all, on an implied assumpsit or promise. In order that such promise may be implied by

City of Chicago v. County of Cook.

law, it must appear that the duty was imposed by law, on the county, to receive into custody and care for delinquent children, either in express words, or by necessary implication, that the county failed or refused to perform that duty, and that the city *ex necessitate* performed it. We are not permitted to indulge in vague conjecture as to what the powers and duties of the county are. All its powers are conferred and all its duties imposed by statute. In Symonds v. Clay County, 71 Ill. 357, the court say :

" The statutes prescribe all the duties which counties owe and impose all the liabilities to which they are subject. Unless made so by express legislative enactment, they are not considered liable to persons injured by the wrongful neglect of duty or wrongful acts of their officers or agents, done in the course of the performance of corporate powers, or in the execution of corporate duties."

The court cites numerous authorities in support of the text. The case is cited with approval in several subsequent cases. It is conceded by appellant's counsel that the act of 1899 does not impose on counties the duty contended for by the city, as it manifestly does not. On the contrary the provisions of that act are wholly inconsistent with the performance by the county of the duty to provide for the custody and care of delinquent children, committed in accordance with the provisions of the act, and as the children in question were committed. Section 11 provides :

" When any child shall be sentenced to confinement in any institution to which adult convicts are sentenced, it shall be unlawful to confine such child in the same building with such adult convicts, or to confine such child in the same yard or inclosure with such adult convicts, or to bring such child into any yard or building in which such adult convicts may be present."

It does not appear from the evidence that the county has any building, except the county jail, into which it could receive children found by a court to be delinquent, and it is admitted that the county jail is one building under one roof. By law, adults are there confined and held in custody. Section 9 of the act of 1899 provides, as already shown,

that certain delinquent children may be committed to an institution "provided by a city." The children in question were so committed. The act of 1899 is entitled "An act to regulate the treatment and control of dependent, neglected and. delinquent children," and the body of the act is strictly germane to the title. How could the county take into custody and control, and care for delinquent children who could not be received into the county jail, and who were, under authority of law, committed to the House of Correction, of which the city has sole control? It can hardly be contended that the General Assembly has imposed a duty on the county, the performance of which it has rendered impossible by the act of 1899.

Counsel, in their argument, do not point out or rely on any statute in force in the year 1899, making it the duty of the county to provide for the custody and care of delinquent children. Yet they say:

"It is contended, nevertheless, by the city, that these delinquents were a county charge, and that Cook county is made liable for their support by reason of their commitment by the court."

How the county can be made liable for the support of delinquent children, by reason of their having been legally committed to the care of the city, we can not understand. We have already shown the fact that the county, in view of the act of 1889, could not take the control and custody of such delinquents, for the reason that it could not, under the law, confine them in the county jail, and for the further reason that, by virtue of the law, the court committed them to the custody of the city. Only such prisoners as are legally committed to the county jail can be confined there. Section 4 of chapter 75 of the statutes provides:

"The keeper of the jail shall receive and confine in the jail, until discharged by due course of law, all persons who shall be committed to such jail by any competent authority." Hurd's Stat., 1899, p. 1045.

The only prisoners whom the county is authorized or

City of Chicago v. County of Cook.

required to receive and confine, are those committed to the jail, as mentioned in this section.

Counsel for appellant cite Seagraves v. Alton, 13 Ill. 366, Board of Supervisors of LaSalle Co. v. Reynolds, 49 Ib. 186, and Perry v. City of DuQuoin, 99 Ill. 479, in support of their contention. None of these cases supports appellant's contention. In each of them a duty was imposed on the defendant by statute, which was an element necessary to a recovery, and which is absent in the present case. In the Seagraves case the duty was imposed by statute on the city of Alton, to provide for and take charge of all paupers within the city limits. Repeated application was made to the city to perform that duty in respect to a certain pauper. The city refused and Seagraves took care of and provided for him. Held, he could recover. In Board of Supervisors, etc., v. Reynolds, it was made the duty of the county, by statute, to give, or order to be given, such assistance as might be deemed necessary, to any person not coming within the definition of a pauper, who should fall sick within the county, not having money or property to pay his board, nursing and medical aid. Certain persons without money, etc., fell sick in the town, of smallpox, and an application was made to the overseer of the poor in their behalf, and he employed Reynolds, a physician, to render them medical services, which he did, and presented a bill to the board of supervisors for $125, but the board refused to allow more than $50, which Reynolds refused to receive. Held, that he could recover.

County of Perry v. City of DuQuoin is a case similar to the last. The county neglected to furnish the necessary aid, and the city furnished it, and was held entitled to recover from the county.

Cases decided in other states have been cited by counsel, but we think it unnecessary to comment on them. The delinquent boys committed to the John Worthy school were not committed as criminals in the ordinary sense, and to be punished as such. The state, by the act of 1899, does not treat them as criminals. The object of that act is care,

54 · APPELLATE COURTS OF ILLINOIS.

VOL. 106.] Chicago Telephone Co. v. Illinois Mfrs. Ass'n.

not punishment; to prevent the boys from becoming criminals, not to punish them as such. The legislature had ample power to direct that they might be committed to a city institution, without compensation to the city. A municipal corporation · is a mere agent of the state for the purpose of local government within its territorial limits. It has no vested right in its revenues or funds. These are subject to legislative control and disposition. Bush v. Shipman, 4 Scam. 186, 190; Dennis v. Maynard, 15 Ill. 477; People v. Power, 25 Ib. 187, 191; Sangamon Co. v. City of Springfield, 63 Ib. 66, 71; 1 Dillon on Mun. Corp., 4th Ed., Sec. 62, and notes.

The judgment will be affirmed.